William Hodge BLACKBURN, Appellant,

v.

Mrs. Virginia Ware BLACKBURN, Appellee.

Supreme Court of Tennessee.

Aug. 18, 1975.

464

Hewitt P. Tomlin, Jr., Waldrop, Hall, Tomlin & Farmer, Jackson, for appellant.

George O. Benton, Moss & Benton, Jackson, for appellee.

## OPINION

COOPER, Justice.

William Hodge Blackburn has appealed from a decree of the Chancery Court of Madison County sustaining appellee's motion for summary judgment and holding appellant liable for payment of support for his daughter, Betsy Ware Blackburn, until she reaches twenty-one years of age. Appellant insists he was relieved from the obligation of making child support payments when his daughter reached the age of eighteen.

Appellee, Virginia Ware Blackburn, obtained a divorce from appellant by decree entered on August 15, 1961. In the final decree, the chancellor expressly approved and incorporated by reference a property settlement and child support agreement, including a supplement thereto, which had been entered into by the parties in June, 1961, in contemplation of the divorce. The agreement provided, in pertinent part, that the appellant would pay to the appellee five hundred dollars each month for the "support, maintenance and education of the children during the first two years after entry of the divorce decree," and

"14. Beginning after two years after the entry of the decree of divorce, the Husband [appellant] will pay to the Wife [appellee] an amount equal to thirty (30%) percent of his net income . . . for the support, maintenance and education of the three children of the parties until the eldest of said three children reaches the age of twenty-one (21) at which time said payments shall be reduced to twenty (20%) percent of net income. Said payments shall continue at twenty percent of net income until the second child of the parties reaches age twenty-one (21) at which time the payments shall be reduced to ten (10%) percent of net income, and shall continue at this rate until the youngest child of the parties reaches age twenty-one (21), at which time said support payments shall cease."

The agreement also contained a specific provision for the payment of college tuition and education expense, in pertinent part as follows:

"15. In addition to the support payments set out in the above two items the Husband agrees to pay the college tuition of each of the three children of the parties, at any of the following State Universities: University of Tennessee, University of Alabama, or Auburn University. Each child under this provision shall be provided with four years of college education. Included in this provision is the Husband's obligation to pay the expenses of room and board for each child, in addition to any regular tuition charge made by the University . . . . In the event that any one of said children does not attend college, or having entered upon a college program, but does not complete four years of same, then the obligation of the Husband will be reduced proportionately, the obligation of the Husband in this instance being only toward the college education of said children."

At the time the agreement was executed by the parties, their minor children were Karen Ann Blackburn, age fifteen years, William Stanley Blackburn, age nine years, and Betsy Ware Blackburn, age six years.

On May 11, 1971, Section 3 of Chapter 162, 1971 Public Acts of Tennessee, now codified as T.C.A. 1–313, became effective and provided that: "Any person 18 years of age or older shall have the same rights, duties and responsibilities as a person 21 years of age or older."

On June 16, 1973, the youngest child of the parties, Betsy Ware Blackburn, became eighteen years of age. Appellant then ceased making child support payments to appellee for the benefit of Betsy. (Appellant concedes he is bound to pay his daughter's college tuition and expense as set out in the agreement and the decree of the Chancery Court.)

Appellee filed the present action, with the result that the chancellor sustained appellee's motion for summary judgment and ordered appellant to continue to make child support payments to appellee until Betsy Ware Blackburn reaches the age of twenty-one years. This appeal resulted.

■ A husband and wife contemplating divorce oftentimes enter into a property settlement agreement, which also provides for periodic payment of a specified amount for the support of their minor children. The agreement on child support payments is not binding on the trial court, but is evidence to which the court will look in determining the amount of child support needed and to be paid by the husband or, in a few instances, by the wife. If the trial judge accepts the agreement of the parties as the proper amount of support for the minor children and incorporates it in the decree of divorce, the agreement becomes merged into the decree and loses its contractual nature. *Whitt v. Whitt*, 490 S.W.2d 159 (Tenn.1973); *Penland v. Penland*, 521 S.W.2d 222 (Tenn.1975); *Morrissey v. Morrissey*, 214 Tenn. 112, 377 S.W.2d 944 (1964); *Osborne v. Osborne*, 29 Tenn. App. 463, 197 S.W.2d 234 (1946). "The reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify." *Penland v. Penland, supra*, 521 S.W.2d at 224. If the child support provision of the contract did not merge into the decree and lose its contractual nature, any subsequent modification of child support payments by the trial court would be violative of the constitutional prohibition against the impairment of contractual obligations. Article 1, Section 20 of the Constitution of the State of Tennessee. Cf. *Whitt v. Whitt, supra.*

■ An agreement between a husband and wife on matters outside the scope of the legal duty of child support during minority, or alimony in futuro over which the court also has continuing statutory power to modify, retains its contractual nature, although included in the decree of the court, and is enforceable in the same manner as other contracts. See *Penland v. Penland, supra, wherein the contractual obliga-*

tion of the father to pay "all future education expenses beyond high school level," was enforced. See also *Jones v. Jones*, 503 S.W.2d 924 (Tenn.App.1973), where the court enforced an agreement calling for the father to support a child beyond the period imposed upon him by law.

■■■ The agreement sought to be enforced in the instant case is the provision for periodic payments of child support, wherein the appellant agreed to support his children until they reached the age of twenty-one. Being within the scope of appellant's legal duty to support his minor children at the time the agreement was executed, the agreement lost its contractual nature when it was approved by the trial judge and was incorporated in the decree. From that point forward, it was the decree of the trial court and could be enforced only so long as the appellant had a legal duty to support his minor children. The authority of the chancellor to order appellant to make child support payments is statutory and generally exists only during minority. T.C.A. Sections 36–820 and 36–828; *Whitt v. Whitt, supra; Penland v. Penland, supra.* As is pointed out in *Whitt v. Whitt, supra,*

> "The authority of the court to order appellee [husband] to make payments in support of his children was by virtue of statutes, to-wit; T.C.A. § 36–820 and § 36–828. These statutes retain the matter within the jurisdiction of the court for any future changes as to child support and the rights of both appellant and appellee as governed by these statutes. Under these statutes the authority of the Court to order appellee to make payments for support of his children (it not being alleged either child was mentally or physically incapacitated) was for that period when appellee was required by law to support his children, which is during their minority. By virtue of Chapter 162, Public Acts of 1971, for better or worse, a child is no longer a minor when he reaches the age of eighteen." (emphasis supplied)

■■ Betsy Ware Blackburn has reached the age of eighteen. Appellant is no longer required by law to support her. *Weinstein v. Heimberg*, 490 S.W.2d 692 (Tenn.App. 1972). Consequently, the courts are without authority to order appellant to make periodic payments of child support. The decree of the chancellor providing for such payments accordingly is reversed, and the petition of appellee is dismissed. Costs are adjudged against appellee, Virginia Ware Blackburn and her surety.

FONES, C. J., and HARBISON, J., concur.

HENRY and BROCK, JJ., dissent.

HENRY, Justice (dissenting).

In good conscience, I cannot lend my assent to the majority opinion.

The issue before the Court is whether an agreement solemnly entered into by these parties, at the time of their divorce, providing for the support of the youngest child until she "*reaches age twenty-one (21)*", is enforceable.

The parties so contracted; the trial judge so decreed.

Having stated the issue, the matter may be brought into closer focus by stating what is not the issue. The unquestioned right of the Court to modify a decree of child support, upon a showing of a change of circumstances, is not here involved.

Nor are we directly concerned with the question of the merger of a property settlement agreement into a decree. It merges— but to a qualified extent.

We are solely concerned with the right of the Court to terminate abruptly, and as a matter of law, and without an evidentiary basis or factual finding, a judicially sanctional contract.

The majority opinion proceeds upon the assumption that the incorporation of the agreement into the decree results in its total and irrevocable obliteration, insofar as

the legal duty of child support is concerned, with the result that the Legal Responsibility Act of 1971 (T.C.A. § 1–313) operates, automatically and as a matter of law, to terminate an agreement made a decade earlier. With this conclusion I cannot agree.

So far as I am able to determine the theory of merger and loss of contractual identity was introduced into Tennessee law by *Osborne v. Osborne*, 29 Tenn.App. 463, 197 S.W.2d 234 (1946), wherein the Court after recognizing that the agreement merges into the decree, held that it:

> (t)hereby loses its contractual nature at least *to the extent that the court has the power to modify the decree when changed circumstances so justify.* 197 S.W.2d at 236 (Emphasis supplied)

Some of the later cases have ignored this qualification, but not the latest pronouncement of this Court wherein our Chief Justice, in *Penland v. Penland*, 521 S.W.2d 222 (Tenn.1975) correctly noted:

> The reason for stripping the agreement of the parties of its contractual nature is the *continuing statutory power of the Court to modify its terms when changed circumstances justify.* (Emphasis supplied) 521 S.W.2d at 224.

This language, with which I am in full agreement, is quoted in the majority opinion, but has no relevance since we do not deal with change of circumstances, but with the obliteration of a contract as a matter of law.

In *Penland* we held:

> (T)hat only that portion of a property settlement agreement between husband and wife dealing with the legal duty of child support, or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a decree for divorce. 521 S.W.2d at 224.

The language is summarized in the majority opinion and yet is in conflict with the rationale of that opinion. If a parent is under no legal duty to support his child when he has attained age eighteen (18), then it necessarily follows that so much of the agreement as would mandate support from age 18 to age 21 is "outside the scope of the legal duty", and is enforceable.

*Penland* stands as authority solely for the proposition that a contract between a husband and wife, in the throes of a divorce, under which the husband would provide a college education for his children is enforceable, irrespective of the adoption of the Legal Responsibility Act of 1971 and the decisions of this Court.—Only this and nothing more.

The first case to be decided after the passage of the 1971 Act was *Garey v. Garey*, 482 S.W.2d 133 (Tenn.1972); however, this case is of no relevance, since the agreement provided for support until "each child reaches twenty-one (21) years of age or is *otherwise emancipated*". Obviously, the 1971 Act resulted in the children being "otherwise emancipated" upon attainment of age 18. The Court's opinion stressed this phraseology.

The next case was *Whitt v. Whitt*, 490 S.W.2d 159 (Tenn.1973) wherein the agreement provided for final termination of support upon attainment of "majority". Again the 1971 Act accelerated the majority of the child and the Court held that the obligation to support ended. As pointed out in *Jones v. Jones*, infra, much of *Whitt* was dicta. Moreover, my distinguished predecessor, Honorable Allison B. Humphreys, filed an eloquent dissent, in which he said, in part:

> I recognize that the opinion prepared for the Court by the Chief Justice is based upon acceptable principles of law, but I am obliged to dissent. I dissent, because, in my opinion, the result of the application of these otherwise acceptable principles is the unjust unsettling of family separation and divorce property arrangements arrived at in possible or probable contemplation of the father's obligation to continue the support of his children at least through some of their college years. And that the opinion will relieve the father of this obligation by

retroactive application of the eighteen-year old statute, which is wrong. 490 S.W.2d at 161.

I concur with Mr. Justice Humphreys.

Finally in *Jones v. Jones*, 503 S.W.2d 924 (Tenn.App.1973), the Court of Appeals, in a most excellent opinion by Judge Puryear, held that a contract executed before the 1971 Act, and providing for child support until age 22 or until each completes his, or her, education was valid and enforceable. As held by the Chancellor, this case is on all-fours with *Jones*. We denied certiorari in *Jones*.

Viewed from any angle this husband and wife entered into a valid agreement under the terms of which he obligated and committed himself to support children until they reached age twenty-one (21). The wife structured her finances accordingly. Ten years later the legislature, primarily in order to give persons eighteen years of age the right to vote and with no intent to destroy vested contractual commitments, passed an act reducing the age of majority to age eighteen (18). The husband reneged and repudiated his solemn covenant.

This, I cannot conscientiously countenance. I cringe at the Court's conclusion in this case.

BROCK, J., concurs.