IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 22, 2024 Session

## IN RE GUARDIANSHIP OF BEATRICE ROSE MALONE

**Appeal from the Probate Court for Davidson County**
**No. 17P1523 Amanda Jane McClendon, Judge**

_____

**No. M2023-01353-COA-R3-CV**

_____

W. NEAL MCBRAYER, J., dissenting.

For disobedience of or resistance to a court order to constitute contempt, four elements must be satisfied. *Konvalinka v. Chattanooga–Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008); *see* Tenn. Code Ann. § 29-9-102(3) (2024) (defining the scope of a court's contempt power). This case turns on the second of the four: whether "the order alleged to have been violated . . . [was] clear, specific, and unambiguous." *Konvalinka*, 249 S.W.3d at 354. Because the order here was not sufficiently specific to support the finding of contempt, I would reverse.

As the majority notes, the parties have agreed on the facts. A probate court named Patrick Malone guardian of his minor child and granted Mr. Malone's request to establish an irrevocable trust (the "Tennessee Trust") for the child's benefit. The order authorizing the creation of the Tennessee Trust also ordered Mr. Malone to deposit specific categories of funds into the trust. Those categories did not include recoveries from a contemplated wrongful death lawsuit to be filed on the child's behalf; the lawsuit stemmed from the accidental death of the child's mother.

Later, Mr. Malone filed the wrongful death lawsuit in another state. When the case settled, Mr. Malone sought the foreign court's approval of the settlement. In doing so, he advised the foreign court of the Tennessee Trust and his intention to create a separate trust under the laws of Missouri to hold the settlement proceeds (the "Missouri Trust"). The foreign court approved the settlement, and Mr. Malone deposited the settlement in the Missouri Trust.

In probate court, the child's maternal grandparents, who were also the trust protectors of the Tennessee Trust, asked that Mr. Malone "be sanctioned and held in civil

contempt due to his violations of th[e] Court's Orders and the Tennessee Trust provisions." *See* Tenn. Code Ann. § 35-15-1201 (2021). Mr. Malone responded that the proceeds from the wrongful death action were not explicitly included in the court's prior order creating the Tennessee Trust. The court acknowledged as much in its memorandum opinion, but it still held Mr. Malone in contempt. It did so by reading the prior order and the Tennessee Trust together:

> The Tennessee Trust, approved and adopted by the Court, clearly stated "[t]he Trust shall be *initially* funded" with the explicitly listed assets," but that [*f*]*urther and additional amounts shall be contributed to the Trust as may become available to* [the child]." *See* Tennessee Trust, Article II, ¶ A. (emphasis added). The Court's Order may not have explicitly included a catch-all provision, but the Tennessee Trust did. The Court adopted the Tennessee Trust in its Order and found the Petition and Trust "in the manifest best interest of the child." The Order and the Tennessee Trust language are clear, specific, and unambiguous.

On appeal, the majority frames the issue as "whether the trust was part of the court's order or part of a command of the court such that Mr. Malone could be found in contempt for violating a provision of the trust." The majority concludes it was, reasoning that "[r]etaining supervision of the trust does, in a very real and practical sense, incorporate the trust into the court's order." The majority also points to the language in the Tennessee Trust that provides that the trust "is created by operation of law as it is implemented by the Court." In the majority's view, "[t]he 'implemented by the Court' language further emphasized the order or command nature of the trust instrument and the [probate] [c]ourt's involvement in enforcement."

The majority's analysis has some appeal. The approach is akin to the treatment of agreements by divorcing couples for payment of child support. Such agreements are not binding on the trial court, but the agreed amount of support can become part of the divorce decree "[i]f the trial judge accepts the agreement of the parties as the proper amount of support for the minor children and incorporates it in the decree of divorce." *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975). At that point, "the agreement becomes merged into the decree and loses its contractual nature."[1] *Id.* (citations omitted). And the

---

[1] The merger is only partial. "An agreement . . . on matters outside the scope of the legal duty of child support during minority, or alimony in futuro over which the court also has continuing statutory power to modify, retains its contractual nature, although included in the decree of the court, and is enforceable in the same manner as other contracts." *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975). So Tennessee might be described as following a "hybrid" approach to the treatment of marital dissolution agreements. *See* Doris Del Tosto Brogan, *Divorce Settlement Agreements: The Problem of Merger or Incorporation and the Status of the Agreement in Relation to the Decree*, 67 NEB. L. REV. 235, 244-45 (1988) (describing three approaches to treatment of a divorce settlement agreement as it relates to the

2

court can order the parent obligated to make child support payments so long as there is "a legal duty to support [the] minor children." *Id.* at 466.   w

The trouble lies in the question of how fully the terms of Tennessee Trust were incorporated in the terms of the probate's court order. Yes, the Tennessee Trust was attached as an exhibit to the order approving its creation, and yes, the court found that it was "in the manifest best interest of the minor child."  The order also provided that "[t]he trust shall be court supervised."  But that statement does not completely describe the role of the court in relation to the Tennessee Trust.  By the terms of the trust, the court's supervision ends when the child reaches the age of 18; however, the Tennessee Trust continues until the child reaches the age of 25.  The language of the order simply does not provide notice of the terms of the Tennessee Trust or the obligations of the trustee that will be enforced by the court's contempt power.  Thus, the necessary specificity is lacking.  *See Doe v. Bd. of Pro. Resp. of Supreme Ct. of Tenn.*, 104 S.W.3d 465, 471 (Tenn. 2003) (recognizing "that one may not be held in contempt unless he or she violates a specific order of a tribunal properly having jurisdiction of that person").

One could assume that any order authorizing the creation of a trust and finding the terms of the trust in the best interest of the child incorporated all terms of the trust into the order, but it would be unusual and redundant for the court to fully incorporate the terms of a trust into an order.  Under the Tennessee Uniform Trust Code, a trustee must "administer the trust . . . in accordance with its terms and purposes."  Tenn. Code Ann. § 35-15-801 (2021).  And if the trustee fails "[t]o remedy a breach of trust that has occurred . . . , the court may . . . [c]ompel the trustee to perform the trustee's duties."  *Id.* § 35-15-1001(b)(1) (2021).  It may also "[c]ompel the trustee to redress a breach of trust by paying money [or] restoring property."  *Id.* § 35-15-1001(b)(3).  Such remedies make fully incorporating the terms of a trust into a court order unnecessary.

So I respectfully dissent.

s/ W. Neal McBrayer
W. NEAL McBRAYER, JUDGE

---

divorce decree: independent contract, partial incorporation without complete merger, or complete merger where "the rights and obligations of the parties arise from the decree exclusively").